# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| **DANNY ELLIS REESE,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.: 4:11-CV-2555-RDP** |
| | } | |
| **MICHAEL J. ASTRUE,** | } | |
| **COMMISSIONER OF** | } | |
| **SOCIAL SECURITY,** | } | |
| | } | |
| **Defendant.** | } | |

## MEMORANDUM OF DECISION

Plaintiff Danny Ellis Reese brings this action pursuant to Title II of Section 205(g) of the Social Security Act (the "Act"), seeking review of the decision by the Commissioner of the Social Security Administration ("Commissioner") denying his claim for a period of disability and disability insurance benefits. *See also*, 42 U.S.C. § 405(g). Based upon the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

## I.    Proceedings Below

Plaintiff filed his application for disability on April 7, 2009, in which he alleged that disability began on October 15, 2008. (R. 12, 49, 102). Plaintiff's application was denied by the Social Security Administration on May 18, 2009. (R. 50). Plaintiff then requested and received a hearing before Administrative Law Judge Mary E. Helmer ("ALJ") on September 13, 2010. (R. 28-48, 60-61). In her decision, dated October 7, 2010, the ALJ determined that Plaintiff had not been under a disability within the meaning of §§ 216(i) and 223(d) of the Act from October 15, 2008,

through October 7, 2010, the date of her decision. (R. 12-23). After the Appeals Council denied Plaintiff's request for review of the ALJ's decision (R. 1), that decision became the final decision of the Commissioner, and thereafter a proper subject of this court's review.

Plaintiff was forty-three years old on the date of the ALJ hearing and had a high school education. (R. 33, 102). He initially alleged that he has been disabled since October 15, 2008, the last day he worked at his job as a construction worker, because he did not get along with his boss. (R. 44, 102-08, 142). However, Plaintiff introduced evidence at the hearing which suggests that he suffers from a combination of impairments consisting of lumbar disc bulges, neck disc bulges, and neuralgia on his right side, affecting his right arm and hand. (R. 31, 35). Plaintiff also testified at the ALJ hearing of his past alcohol problems. (R. 33-34).[1]

Plaintiff has medical records from multiple treating and examining physicians during his alleged period of disability. (R. 167-68, 170-74, 178-206, 219-25, 229-33). Records dated April 1, 2009, from Dr. George Harris of Rapha Health Care, a treating physician, noted that Plaintiff had arthritis in the right shoulder; atrophy of the right pectoral, triceps and flexors; and hypoesthesia or the right ulnar dist. (R. 173).

A letter from Dr. Michelle Turnley of Orthopaedic Specialists of Alabama dated April 7, 2009, describes Plaintiff as slightly cachectic, fairly deconditioned, an alcoholic, and having "significant weakness in the right arm that has been persistent for five years," although "[h]e is a poor historian" and "does not describe what particular incident caused the issue." (R. 167). The letter further stated that even though Plaintiff relates that he was told he may have a pinched nerve in his

---

[1]Plaintiff testified that he stopped imbibing alcohol approximately one year prior to the hearing. (R. 34).

neck, "he has never had any workup to that record or any significant workup." (*Id.*). Dr. Turnley further noted:

> Pain is not a big issue, although he occasionally has some pain in that arm. While there is muscle wasting in the right shoulder girdle and right arm, there is a full range of motion in the right shoulder, and at least 3/5 motor strength in all muscle groups of the deltoid, biceps, triceps, wrist extensors and hand intrinsics.

(*Id.*) Finally, the doctor opined, "I do believe it would be difficult at this point for Mr. Reese to participate in any type of gainful employment and is essentially disabled." (R. 168). Plaintiff then received an MRI, with results on April 8, 2009, giving the opinion of mild cervical spondylosis. (R. 200-06).

Records from Dr. Harris dated April 21, 2009, show that Plaintiff drinks a six-pack per day of alcohol and smokes 3/4 to 1 pack of cigarettes daily, and that Plaintiff desired Librium to help him stop drinking. The same day, Plaintiff was examined for pain in the shoulder and a tender right neck and brachial plexus. Dr. Harris' conclusion was neuralgia, muscle atrophy and hypertension, and his plan was to have Plaintiff lower his alcohol intake and discontinue smoking. (R. 170-72, 222-25). Plaintiff visited the emergency room at St. Vincent's East and was admitted on April 27, 2009, after reportedly drinking a twelve-pack of beer, being dehydrated, and having an alcohol level of 271. Plaintiff was discharged the following day. (R. 187-99). Of note in the ER records were the results of a general physical examination: no motor deficit, full range of motion in extremities and non-tender extremities. (*Id.*)

On May 5, 2009, Plaintiff phoned Dr. Harris complaining of periodic rectal bleeding. (R. 221). On May 8, 2009, Plaintiff visited Dr. Mukul Mehra due to blood in his stool, nausea and vomiting, and a colonoscopy and EGD were performed. The colonoscopy impressions were internal

3

hemorrhoids and diverticulosis; the EGD impressions were: 1) Barret's; 2) GE junction nodule, appeared benign, biopsied; 3) biopsy of Barrett's taken; 4) hiatal hernia noted; 5) gastritis, most likely alcohol gastritis though biopsies were taken to rule out H. pylori gastritis. (R. 229-33). The last medical record in Plaintiff's file was a July 1, 2009 phone call to Dr. Harris requesting a refill of Librium. (R. 220).

Dr. Victoria Hogan, a non-examining physician, reviewed Plaintiff's medical records on May 15, 2009, and determined that Plaintiff "will require[] severe RUE restrictions on an RFC." (R. 207). Also, on May 15, 2009, Dr. Hogan made a residual functional capacity assessment ("RFC"), noting specifically Dr. Turnley's opinion concluding Plaintiff was "essentially disabled:"

> This was considered and given some weight, and severe limitations are being recommended for the RUE in the RFC. However, an ongoing/consistent MDI of other medical impairments/limitations to support total disability excluding the RUE are not consistently noted in the file.

(R. 210-17).

## II.    ALJ Decision

For a claimant to be determined disabled as defined under the Act, the claimant must have "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months," and which "makes you unable to do your past relevant work . . . or any other substantial gainful work that exists in the national economy." 20 C.F.R. § 404.1505(a). A physical or mental impairment is defined as an impairment that "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

Social Security regulations provide a five-step sequential evaluation process for determining whether an individual is disabled. 20 C.F.R. § 404.1520(a); *see e.g. Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005); *Ortega v. Charter*, 933 F.Supp. 1071, 1073 (S.D. Fla. 1996). First, the ALJ must determine if the claimant is doing substantial gainful activity; if so, a finding of non-disability is made and the inquiry ends. 20 C.F.R. § 404.1520(b).  Substantial gainful activity is work involving "significant and productive physical or mental duties; and is done (or intended) for pay or profit." 20 C.F.R. § 404.1510. If it is determined that the claimant is not engaged in substantial gainful activity, the evaluation proceeds.

In the second step, the ALJ must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe." 20 C.F.R. § 404.1520(c). "Severe" is defined under Social Security regulations as requiring that the individual have a medically determinable impairment, or combination of impairments, that is not merely a slight abnormality that would have no more than a minimal effect on an individual's ability to work; that is, it significantly limits an individual's ability to do basic work activities. *Id*.; *see also* 20 C.F.R. § 404.1521; Social Security Ruling ("SSR") 85-28[2]. If the claimant does not suffer from a "severe" impairment or combination of impairments, then the inquiry ends.

Third, the ALJ considers the medical severity of the claimant's impairment or combination of impairments and compares them to those in the listing of impairments. 20 C.F.R. § 404.1520(d). If the claimant's impairment or combination of impairments meets or medically equals the criteria of a listing, the claimant may be declared disabled. *Id.* Otherwise, the inquiry proceeds.

---

[2]*See* http://www.ssa.gov/OP_Home/rulings/di/01/SSR85-28-di-01.html.

5

Step four requires the ALJ to determine the claimant's residual functional capacity based on the individual's relevant medical and other evidence in the record, and assess whether the claimant can do past relevant work based on the residual functional capacity. 20 C.F.R. § 404.1520(e). If the claimant can do past relevant work, then a finding of not disabled is made. 20 C.F.R. § 404.1520(f). However, if the claimant cannot do past relevant work, then the Commissioner must show, at step five, that there is other work in the national economy the claimant can perform based on the claimant's residual functional capacity, age, education and work experience. 20 C.F.R. § 404.1520(g). If the claimant can do no other work, then he or she is disabled; if a finding to the contrary is made, the claimant will be found not disabled. *Id.*

In the instant case, the ALJ determined both that Plaintiff has not engaged in substantial gainful activity since October 15, 2008, and that he has multiple severe impairments, satisfying steps one and two of the analysis. (R. 14). The ALJ found, however, that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1," noting that:

> The medical evidence of record, including evidence most favorable to [Plaintiff], revealed no limitation in [Plaintiff]'s ability to ambulate. . . . One treating physician opined that [Plaintiff] was unable to perform gainful work activity. . . . [S]he attributed this lack of capacity for work, solely to limitations involving the use of his upper right extremity. . . . The record is simply void of evidence indicating that [Plaintiff]'s spinal and/or right upper extremity impairment, cause any limitation in effective ambulation. The same evidence provides no indication of any significant limitation involving the left upper extremity.

(R. 15). The ALJ concluded, "As to musculoskeletal limitation [Plaintiff]'s only significant limitation involves his upper right extremity." (*Id.*) The ALJ then pointed out that "in order for his

impairment to meet the applicable listing," Plaintiff "must suffer major dysfunction in a major peripheral joint in *each* upper extremity. Limitation in one does not result in a met or equaled listing." (*Id.*)

Furthermore, the ALJ addressed and concluded Plaintiff's gastric and alcohol impairments have not "caused any disabling limitations." (R. 16). More specifically, "it appears that [Plaintiff]'s digestive issues were acute or resolved well within the statutory minimum 12 months to find disability." (*Id.*) The ALJ considered that Plaintiff's abuse of alcohol did not result "in any mental and/or physical impairment that severely limits [Plaintiff]'s capacity for functioning as defined by a secondary listing." (*Id.*) Lastly, the ALJ determined that Plaintiff's alleged symptoms of depression and anxiety were "never reported" and he never "sought help for any mental impairment," thus rendering any mental listings irrelevant. (*Id.*)

The ALJ next determined Plaintiff's residual functional capacity and found him limited to simple, routine and repetitive tasks, and capable of performing light work as defined in 20 C.F.R. 404.1567(b) except that he cannot use his right arm and hand for any lifting and carrying. (*Id.*) After a lengthy explanation, the ALJ concluded that Plaintiff is unable to perform any past relevant work, but that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, satisfying steps four and five of the analysis. (R. 21).

## III.    Plaintiff's Argument for Reversal

Plaintiff makes two specific allegations of "reversible error" in his claim: (1) the ALJ failed to accord proper weight to the opinion of his treating physician, Dr. Michelle Turnley; and (2) the ALJ failed to properly consider his daily activities in the disability determination. (Pl.'s Mem. 6).

**IV.     Standard of Review**

Judicial review of disability claims under the Act is limited to whether the Commissioner's decision is supported by substantial evidence or whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). "Substantial evidence is less than a preponderance, but rather such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005); *see also Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)). It is something "more than a mere scintilla." *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987). The Commissioner's factual findings are conclusive when supported by substantial evidence. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). If supported by substantial evidence, the Commissioner's factual findings must be affirmed, even if the record preponderates against the Commissioner's findings. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004); *see also Martin*, 894 F.2d at 1529. Legal standards are reviewed *de novo*. *Moore*, 405 F.3d at 1211.

**V.     Discussion**

Plaintiff contends that the ALJ (1) failed to accord proper weight to the opinion of his treating physician, Dr. Michelle Turnley, and (2) failed to properly consider his daily activities in the disability determination. However, as to both issues, substantial evidence supports the ALJ's findings.  Plaintiff's arguments are off the mark.

**a.     The ALJ Accorded Proper Weight to the Opinion of Dr. Michelle Turnley**

Plaintiff first argues that the ALJ committed reversible error by according weight to a DDS non-examining physician who merely checked boxes on a form.  (Pl.'s Mem. 7). He further submits

8

that the ALJ should have accorded great weight to the opinion of Dr. Michelle Turnley, his treating physician, who knows his medical evidence well and has actually provided treatment for him. (Pl.'s Mem. 8). Dr. Turnley's opinion stated that Plaintiff was "essentially disabled" and she did not believe he could participate in any substantial gainful activity, whereas the other opinion evidence was from a non-examining physician. (Pl.'s Mem. 7).

The Eleventh Circuit has held that the opinion of a treating physician must be given substantial or considerable weight unless 'good cause' is shown to the contrary. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (quoting *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986); *Broughton v. Heckler*, 776 F.2d 960, 961-62 (11th Cir. 1985)). Social Security regulations provide a similar preference:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from other reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 C.F.R. § 1527(c). The Commissioner "must specify what weight is given to a treating physician's opinion." *MacGregor*, 786 F.2d at 1053. "Good cause" has been found when "the doctor's opinion was not bolstered by the evidence, or where the evidence supported a contrary finding." *Lewis*, 125 F.3d at 1440 (quoting *Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987); *Sharfaz v. Bowen*, 825 F.2d 278, 280-81 (11th Cir. 1987)). The Eleventh Circuit has also found "good cause" when "the doctors' opinions were conclusory or inconsistent with their own medical records." *Lewis*, 125 F.3d at 1440 (quoting *Jones v. Department of Health & Human Services*, 941 F.2d 1529, 1532-33 (11th Cir. 1991); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991)).

However, the Commissioner's regulations provide that medical source opinions on some issues are reserved to the Commissioner. "A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled." 20 C.F.R. § 1527(d)(1). A Social Security Administration policy interpretation clarifies that since statements that an individual is disabled are "administrative findings that may determine whether an individual is disabled, they are reserved to the Commissioner. Such opinions on these issues must not be disregarded. However, even when offered by a treating source, they can never be entitled to controlling weight or given special significance." SSR 96-5p[3]; *see also Bell v. Bowen*, 796 F.2d 1350, 1353-54 (11th Cir. 1986). The Commissioner  will consider all statements made by treating physicians, but "will not give any special significance to the source of an opinion on issues reserved to the Commissioner." 20 C.F.R. § 404.1527(d)(3).  A treating physician's conclusory statement that a claimant is "totally disabled" should be explained by his medical findings. *Bell*, 796 F.2d at 1354.

Substantial evidence supports the ALJ's decision here to attribute less weight to Dr. Turnley's conclusory statement that Plaintiff is "essentially disabled." Dr. Turnley examined Plaintiff on April 7, 2009, and reported mostly normal findings and no significant abnormalities. (R. 167-68). Plaintiff had a full cervical range of motion in the cervical spine and a full range of motion in his right shoulder, and his right shoulder had normal sensation with preserved reflexes. (R. 167). Additionally, he had at least 3/5 motor strength in the muscle groups of his deltoid, biceps, triceps, wrist extensors, and hand intrinsic. (*Id.*) An X-ray of his cervical spine and shoulder joint revealed no issues.  (*Id.*)  An MRI of his cervical spine showed mild cervicothoracic scoliosis and accentuated mid cervical lordosis, rendering an opinion of mild cervical spondylosis. (R. 203).

---

[3]*See* http://www.ssa.gov/OP_Home/rulings/di/01/SSR96-05-di-01.html.

10

More telling, Plaintiff told Dr. Turnley that "pain is not a big issue, although he occasionally had some pain in that arm." (*Id.*) Dr. Turnley's impression was "significant weakness in the right arm that has been persistent for five years," that she "believe[s] it is a problem of long-standing," and that she is "not sure any correction at this point is going to be that beneficial." (R. 167-68). Still, she opined that she "believe[s] it would be difficult at this point for Mr. Reese to participate in any type of gainful employment and is essentially disabled." (R. 168).

The ALJ found that where Dr. Turnley's opinion was consistent with Plaintiff's residual functional capacity, it received great weight, but also found her opinion finding Plaintiff "essentially disabled" is not consistent with or supported by the evidence of record. (R. 19). The court agrees. As the ALJ pointed out, "assessment of disability is strictly the province of the agency Commissioner. Expert opinion as to disability is not proper." (*Id.*) Plaintiff's ability to work is an opinion reserved to the Commissioner, and therefore the ALJ fairly did not entitle Dr. Turnley's opinion regarding the issue special significance or controlling weight. *See* 20 C.F.R. § 404.1527(d); SSR 96-5p; *Bell*, 796 F.2d at 1353-54.

Substantial evidence supports good cause for the ALJ to grant this opinion less weight. Dr. Turnley's records indicated mostly normal findings and showed no significant abnormalities. (R. 167-168). Defendant's argument that "Dr. Turnley was unaware of some important information about Plaintiff, such as the fact that he had worked four years and four months of the period he alleged he was unable to use his right hand," and that he was fired from work for reasons not due to his health, is one with which the court agrees. (Def.'s Mem. 8-9, citing R. 19). Moreover, Plaintiff was offered the chance to return to work but chose not to do so. (R. 18, 142). As the ALJ stated, the lack of medical care leading up to the point of Plaintiff's alleged onset of disability is further

indication that Plaintiff was able to work, despite alleged depreciation in the use of his hands and pain. (R. 18). It is difficult to see how Dr. Turnley drew her conclusion without knowing that Plaintiff had been engaging in substantial gainful activity for most of the time after he told her his right arm was initially hurt.

The ALJ further pointed to other medical records from treating physicians in Plaintiff's file to support her conclusion. For example, the ALJ pointed out that during Plaintiff's April 27, 2009, emergency room visit, his physical examination was unremarkable. Plaintiff moved all extremities within normal limits. (R. 20, 191-92). While the ALJ stated that "the record is void of any treatment after April-May 2009, for any impairment," Dr. Harris did provide a record of a phone call dated July 1, 2009, requesting a refill of Librium to assist [Plaintiff] with alcohol withdrawal. (R. 20, 220). The record is void of any medical evidence after that date.

Since Dr. Turnley's opinion was conclusory and neither specified how Plaintiff's impairments impacted his ability to work nor was supported by objective medical evidence, the ALJ had good cause to not give it substantial weight. Therefore, substantial evidence supports the ALJ's evaluation of Dr. Turnley's opinion.

The court now turns to Plaintiff's argument that "the ALJ's according weight to a DDS non-examining physician who merely checked boxes on a form was reversible error." (Pl.'s Mem. 7). The Eleventh Circuit has held that the "reports of physicians who do not examine the claimant, taken alone, do not constitute substantial evidence on which to base an administrative decision." *Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985) (quoting *Spencer ex. rel Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985)). "The opinions of non-examining, reviewing

physicians, . . . . when contrary to those of examining physicians are entitled to little weight." *Lamb v. Bowen*, 847 F.2d 698, 703 (quoting *Sharfaz*, 825 F.2d at 278).

The ALJ did attribute great weight to the non-examining physician Dr. Hogan. (R. 21). However, the ALJ pointed out that Dr. Hogan's report is "clearly consistent with the medical and other evidence of recording, including Dr. Turnley's objective findings[4]." (*Id.*) Dr. Hogan's report was not taken alone and was not contrary to the opinions of Plaintiff's examining physicians. The one view of Dr. Turnley from which Dr. Hogan departed was Dr. Turnley's opinion that Plaintiff was disabled. As discussed above, this opinion was conclusory and not supported by objective medical evidence; therefore Dr. Hogan had no reason to include it in her report. Therefore, the ALJ's according weight to Dr. Hogan's report was not reversible error.

### b.     The ALJ Properly Considered Plaintiff's Daily Activities

Plaintiff contends that his minimal daily activities are simply not enough to show that he could perform substantial gainful activity, and that the ALJ erroneously concluded that his daily activities indicated an RFC higher than his abilities (Pl.'s Mem. 9). In making this argument (that a claimant might be able to perform household activities but not participate in substantial gainful activity), Plaintiff cites cases from the Third Circuit, the Eighth Circuit, and this district.  However, the Eleventh Circuit has itself answered this question in part: "participation in everyday activities of short duration, such as housework or fishing, [does not] disqualif[y] a claimant from disability." *Lewis*, 125 F.3d at 1441.  But that does not mean that a claimant's daily activities are to be wholly ignored.

---

[4]In fact, the ALJ went beyond Dr. Hogan's report in determining Plaintiff's residual functional capacity and included "the addition of no reaching overhead."  (R. 21).

Here, Plaintiff asserts the ALJ did gave improper consideration of his daily activities, but it is not at all clear what Plaintiff contends to be an "improper consideration."[5]   In any event, what is clear is that the ALJ was not free to wholly disregard Plaintiff's daily activities.  Both the ALJ and the court must consider the *entire* record to ensure substantial evidence supports administrative conclusions.  *See Dyer*, 395 F.3d at 1210 (quoting *Foote v. Chater*, 67 F.3d 1553, 1558 (11th Cir. 1995); citing 42 U.S.C. § 405(g)).  The  court agrees with Defendant that the ALJ considered the entire record, including Plaintiff's daily activities, when considering Plaintiff's symptoms,[6] and in assessing his claims of disabling pain and his ability to perform a reduced range of light work. (R. 17; *see* Def's Mem. 17).

As the Eleventh Circuit has held, "There is no rigid requirement that the ALJ specifically refer to every piece of evidence in [her] decision, so long as the ALJ's decision . . . . is not a broad rejection which is 'not enough to enable [the court] to conclude that [the ALJ] considered her medical condition as a whole.'" *Dyer*, 395 F.3d at 1211 (quoting *Foote* , 67 F.3d at 1561).

---

[5]One example of improper consideration of Plaintiff's daily activities would be to use them as the sole basis for a finding of non-disability or ability to perform substantial gainful activity, contrary to objective medical evidence.  *See e.g., Lewis*, 125 F.3d at 1441; *Bennett v. Barnhart*, 288 F.2d 1246, 1252 (N.D. Ala. 203).  "Disability does not mean that a claimant must vegetate in a dark room," or "be a quadriplegic or an amputee," and the ALJ here did not contend such extremes. *Smith v. Califano*, 637 F.2d 968, 971-72 (3d Cir. 1981).   The ALJ did not exclusively rely on Plaintiff's daily activities in finding that Plaintiff was not disabled.  (R. 18-21).

[6]The Eleventh Circuit has established a pain standard that "applies when a disability claimant attempts to establish a disability through his own testimony of pain or other subjective symptoms." *Dyer*, 395 F.3d at 1210 (quoting *Holt v. Sullivan*, 921 F.2d 1221 (11th Cir. 1991)). The pain standard requires: (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain. *Id.*  In the instant case, Plaintiff does not argue that the ALJ inappropriately applied the pain standard, and thus, improper application of the rule itself is not an issue.

14

Regardless, as discussed above, the ALJ relied heavily on medical evidence for her determination. (R. 18-21). Her discussion of Plaintiff's daily activities was part of her statutory duty to consider the severity of Plaintiff's impairments.[7]  *See* 20 C.F.R. § 404.1520.

Substantial evidence supports the ALJ's decision, including her consideration of Plaintiff's daily activities. The ALJ's reasons for not finding Plaintiff fully credible regarding pain in his right arm as precluding any substantial gainful activity was based less on Plaintiff's daily activities and more on other evidence,  such as medical records in evidence and Plaintiff's own testimony. (R. 18-19). The ALJ even included in Plaintiff's residual functional capacity "no overhead reaching" based on Plaintiff's testimony, but did not make any conclusive finding based on his daily activities. (R. 21). Therefore, the ALJ's finding was not reversible error, and was supported by substantial evidence.

## VI.    Conclusion

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and proper legal standards were applied in reaching this determination. The Commissioner's final decision is therefore due to be affirmed, and a separate order in accordance with this memorandum of decision will be entered.

---

[7]The ALJ italicized Plaintiff's "taking out the garbage and feeding the dogs."  Why this was done is not precisely clear, although Defendant submits that "the ALJ highlighted these activities as part of his [sic] discussion of Plaintiff's subjective allegations and reports of his daily functional abilities." (Def.'s Mem. 14; R. 17, 136). But this case turns on whether there is substantial evidence in the record to support the ALJ's decision, not why the ALJ highlighted this phrase. The court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner." *Dyer*, 395 F.3d at 1210.

**DONE** and **ORDERED** this ____29th____ day of August, 2012.

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE